35 C.C.P.A.(Patents)

### Application of HAWLEY et al.

### Patent Appeals No. 5388.

Court of Customs and Patent Appeals.

Feb. 10, 1948.

William R. Epes, of New York City (Elmer Stewart, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

Appellants here seek review and reversal of the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner rejecting, as lacking invention over prior art cited, the four claims numbered 3, 7, 8, and 9 of appellants' application for patent entitled "For Method of Depositing Liquid Rubber in an Open Network."

The brief on behalf of appellants describes the article made by their method and gives a general description of the method itself as follows:

"Appellants' invention relates to an improved method of making an open elastic network of rubber by depositing the rubber directly upon a moving backing, which may be a temporary or permanent backing. The invention also includes the method of making rubber backed fabrics wherein the rubber network is deposited directly upon a textile fabric and adhered to such permanent backing. The network of rubber is also useful as a sandwich between two sheets of textile fabrics for the purpose of adhering the sheets together to form a porous fabric free from any exposed rubber surfaces. Such fabrics are elastic and porous and are particularly useful in the manufacture of bathing suits.

"The network of rubber is produced by arranging a plurality of nozzles transversely across the length of a movable backing, and discharging streams of liquid rubber from the nozzles upon the backing while it is moved in a lengthwise direction underneath the nozzles, and the nozzles are being reciprocated transversely of the movement of the backing. The novelty in the method is predicated upon the arrangement of the nozzles, or the streams of dispersions of rubber discharged therefrom, and the rela-tive movement of the nozzles or streams in relation to the backing which is required to cause the streams of rubber deposited upon the backing to be united in a network.

We here reproduce claims 3 and 9:

"3. The method of making a pervious rubber backed fabric comprising the steps of directing streams of a dispersion of rubber upon the fabric from two spaced parallel rows of nozzles having the nozzles in each row arranged on lines perpendicular to the rows and equidistant from the nozzles of the other row, simultaneously advancing the fabric in respect to the nozzles in a direction substantially perpendicular to the rows of nozzles, reciprocating said nozzles in unison with an amplitude substantially equal to one-half the distance between the adjacent nozzles in each row in the direction of the rows at the rate of one stroke during the advancement of the fabric equal to the distance between the parallel rows, thereby laying down an undulatory path of a dispersion of rubber on the fabric by each nozzle which is united with the adjacent path at the adjacent turning points in the adjacent paths to form an open network, and drying the open network of rubber deposit to render it tough and elastic.

"9. The method of making a pervious rubber backed fabric comprising the steps of forwardly advancing a web of textile fabric, comprising the steps of flowing streams of a dispersion of rubber upon the textile fabric from nozzles having orifices arranged on equidistant parallel lines extending in the direction of the advancement of said backing with said orifices on adjacent lines positioned out of transverse alignment an equal distance as measured from one to the other, holding said orifices close to said fabric and forming banks of the dispersion of rubber on the sides of said nozzles from which said fabric advances, moving said nozzles in unison back and forth a distance at least equal to the distance between said parallel lines during the advancement of the fabric a distance substantially equal to the distance said orifices are positioned out of transverse alignment spreading said banks deposited on said fabric into an interconnected network, and drying said network into an elastic network."

It will be noted that claim 3 provides specifically for the arrangement of the nozzles through which the streams of liquid rubber are dispersed in two parallel rows with the nozzle in each row arranged on lines perpendicular to the rows and equidistant from the nozzles of the other row.

Claims 7, 8, and 9 are not limited to the "two parallel row" arrangement, but provide an arrangement whereby the streams are dispersed, as expressed in claim 7 and 8, "on equidistant parallel lines extending in the direction of the advancement of said backing with the streams on the adjacent lines positioned out of transverse alignment an equal distance as measured from one to the other." As we understand it, the "adjacent lines positioned out of transverse alignment," extend longitudinally the movement of the fabric upon which the liquid is being sprayed and "through the turning point of the lines of rubber."

It will be observed that the latter portion of claim 9 specifies matter not recited in any one of the other claims. We refer to the clause reading: "* * * holding said orifices [of the nozzles] close to said fabric and forming *banks* of the dispersion of rubber on the sides of said nozzles from which said fabric advances * * *, spreading said *banks* deposited on said fabric into an interconnected network * * *. (Italics ours.)

A comparison of the foregoing with clauses in claims 7 and 8 discloses that substantially the only change is the substitution of the word "banks" for the word "streams," and there is no serious contention on the part of counsel for appellants that this feature distinguishes from the other claims in a patentable sense.

The following patents constitute the prior art cited as references: Campbell, 1,766,-878, June 24, 1930; Slack (British), 357,-784, Mar. 24, 1931; McLaurin, 1,919,798, July 25, 1933.

Specifically, the examiner rejected the claims "as lacking invention over Campbell in view of either McLaurin or Slack," and the board did the same, describing the Campbell patent as the principal reference and the others as auxiliaries. Of the two latter the board placed most emphasis on the Slack patent.

The Campbell patent, which embraces both product and process claims, relates primarily to the coating of materials used for floor coverings, such as linoleum for example, in a manner by which the coating substances (which are plastic substances) produce "striped, striated or wavy effects so as to simulate marble, granite or wood graining" and which "can be also employed for producing other characters of designs such as geometrical repeats." A further teaching relates to the use of colors, the plastic substances of different colors being so dispersed that they "shade off into each other and at times * * * intermingle and produce new tints * * *."

As an apparatus for use in carrying out the process, Campbell discloses a series of pans (six are shown in Fig. 1 of the drawing) for holding the coating material. The pans have a plurality of outlets, or orifices, in their side walls through which the coating substance passes to the fabric. The specification states that the outlets are "preferably equi-distantly spaced." The floor covering which is being treated passes beneath the pans, and the deposits of the coating substances generally are made longitudinally the material being coated. Cams are provided by which the pans may be given a transverse reciprocating motion, and, when desired, the cams can be so adjusted that all the pans will move as a unit. It is taught that "by a change in the units or by a change in the predetermined portions of the surface upon which each unit deposits, an unlimited variety of designs can be produced due to the relative movement between the surface being ornamented and the sources of the deposits."

It seems clear from a figure of the drawing and from the specification that, as stated by the examiner, the streams of coating substances are equally spaced out of transverse alignment, and, as stated in the specification, the streams may be moved back and forth in unison, which "movement will be at least equal to the distance between adjacent streams issuing from the orifices * * *." The Campbell patent, as has been indicated, discloses treatment

of the lines of deposit of coating substances containing coloring matter so as to cause the coloring matter in one or more of such lines to spread.

The examiner declared that the only method step recited in the appealed claims not definitely shown by the Campbell patent "is the relative speeds of the backing and movement of the streams," and expressed the view that adjustment of this so as to secure the best or desired design is "clearly within the skill of any artisan."

The examiner took note of the fact that Campbell's was not a process of, nor a device primarily intended for, applying rubber to a fabric while the appealed claims specify rubber, but he was of opinion that it would not be inventive to use Campbell's process for dispersing rubber in view of either the Slack (British) patent or the McLaurin patent, both of which name rubber as a substance which may be used in the processes which the patents define, and the board obviously agreed with this view.

The British patent to Slack is for improvements "to Horse Hair Cloths and similar Fabrics." It teaches the application of an adhesive solution, which may be rubber, to a fabric in a manner adapted to form a pattern or design, and discloses an apparatus for depositing streams of the solution from "taper" (funnel-shaped) cups, having orifices, upon a fabric as the fabric is moved longitudinally. The cups are mounted on a rail which is given a transverse reciprocating motion as the fabric moves below the cups. The patent states that the pattern to be formed by the solution may be varied as desired, "By varying the relative speed of reciprocations or the speed of the piece passing through the machine."

The two claims of the McLaurin patent are for an apparatus only. It was designed to be used "for coloring and decorating paper and like web material, including fabrics and textiles in web form." In the apparatus there are spray guns from which lacquer, wherein there may be caoutchouc or rubber latex, is deposited upon a web moving longitudinally "to produce a webbing or vailing effect which may be best described as a net work of fine, thread-like lines of color of a well defined nature spread in a generally irregular fashion over the surface of the paper." It is taught that the spray guns may be oscillated and the oscillation varied, and that by regulating certain features, including the speed of the paper being treated and the speed of oscillation of the spray guns the desired veiling effect may be obtained.

In the brief on behalf of appellants it is asserted that the "cited patents are non-analogous," and it is particularly stressed that "The art in which appellants are working is * * * believed to be non-analogous to that of the Campbell patent, and the latter should not be considered as a reference."

The argument is to the effect that all the lines of plastic substance laid down by Campbell are to create effects whereby there is a simulation of marble, granite or wood graining or of other designs such as geometrical repeats, and that the lines so laid down are smoothed over by a wiper to produce a smooth surface on the covering, while appellants' process relates to laying down a network of rubber in the manufacture of porous, rubber-backed articles, the network not being smoothed in the sense that the floor covering of Campbell is smoothed. The specification of appellants' application teaches that the rubber may be deposited directly upon a fabric (meaning, we suppose, the fabric which is to be permanently a part of the ultimate article of manufacture—for example a bathing suit) or it may be deposited on a removable backing and removed from that to the fabric.

It is obvious that the floor coverings of Campbell are entirely different products from the network products of appellants and the same is true of the horse hair cloths of Slack and the colored and decorated articles of McLaurin; it is true also that there are striking differences between the apparatus used by appellants and those used by the three different patentees, but upon the matter of patentability of the appealed claims the interest does not lie in the apparatus nor in the products of the processes but in the processes themselves. So far as the process here at issue

208

is concerned, we do not think the rule respecting nonanalogous art has any application.

The brief for appellants states three reasons why, in their opinion, the apparatus shown by Campbell is not capable of producing a network. We quote them:

"(1) The length or amplitude of the stroke of the outlets 20 in relation to the transverse spacing of the outlets is not specified.

"(2) There is no statement of the timed relation between the reciprocation of the outlets 20 and the speed at which the surface for receiving the depositions is passed underneath the outlet.

"(3) The patentee does not set forth the required relationship between the length of stroke, the lateral and longitudinal spacing of the outlet in respect to speed of travel of the backing to produce a network.

It seems to us that the reasons so stated amount to nothing more than was comprehended within the examiner's concession when he stated, as hereinbefore recited, that the only method step defined by appellants not definitely shown by Campbell "is the relative speeds of the backing and movement of the streams." This step the examiner believed to be within the skill of any artisan. This holding seems sound to us and it was evidently approved by the board, the latter declaring:

■ * * * It is obvious that a patent should not be issued on the process of manipulating an adjustable device, such as Campbell, to describe the design that would be secured by each obvious adjustment.

As we understand the meaning of this declaration of the board we are in agreement with it.

■ We are not convinced that the allegations of error embraced in the reasons for appeal are sound.

The decision of the board, therefore, is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Judge, was not present at the argument of this case and did not participate in the decision.